November 12, 2011 The ALJ's Award of Automatic Survivors Benefits under the Black Lung Benefits Act in this case was contrary to the unambiguous meaning of the statute, as this Court already determined in its Starks decision, and therefore must be reversed. The clear intent of Section 932L is that survivors are exempted from demonstrating that a coal miner's death was due to pneumoconiosis only if the miner was receiving benefits at the time of his death. So when a court later issued its unpublished opinion in the Allred case, that was just wrong? Your Honor, I don't believe that the Allred case specifically addressed the issue here. The issue in the Starks case... Well, neither did the Starks case. It didn't specifically address the issue. The issue had nothing to do with the situation here, did it? I believe that the issue was addressed in the Starks case, yes, Your Honor. In Allred, neither... Was it part of the holding, or was it just dicta? I believe it was part of the holding, Your Honor. It was necessary to the finding that Mrs. Starks was entitled to benefits for the Court to determine that Mr. Starks had been receiving benefits at the time of his death. The Court said that the only way to get the automatic entitlement to benefits was to make that showing, and that because Mrs. Starks made that showing, she was entitled to benefits. So I do not believe that the decision in Starks was dicta. On the contrary, in the Allred case there, neither party raised the issue of whether or not the automatic award of benefits was appropriate. The only issue addressed by the Court there was on disability finding, whether the rebuttal standard for the minor's claim had been properly applied. Both parties just assumed that the automatic benefits were appropriate in that case, and it was never addressed by the Court. Well, I thought in Starks it was a little bit different because there was the happenstance that the minor there had been determined pre-death to be eligible, but I don't think we said, did we, in any necessary way, that the determination itself must precede death in a case where, you know, that looks like this one. This is just sort of different factually, right? There are different facts, yes, Your Honor, but I believe that the Court held in that case a standard that had to be met in order to have automatic entitlement in the future, and that was that there were two factors that had to be met. The Court said, number one, that the survivor had to establish the relational and dependency requirements rendering her an eligible survivor, and then number two, she had to establish that the minor was receiving benefits when he died. And the Court went on to say, if a survivor could not establish both of those factors, that the survivor would have to demonstrate death was due to pneumoconiosis. In what sense does that make? Why in the world would Congress create a regime in which the delivery of benefits to a widow turns on the efficiency or inefficiency of the ALJ process? Your Honor, the history of this automatic benefits is very convoluted. Congress has gone back and forth about how broad it wants that to be and then restricted it and then gave some of it back again. So, originally, the Act only provided these survivor's benefits if there was a showing of death due to pneumoconiosis. And then in the 70s, there were a couple of different amendments that provided more avenues for survivors to demonstrate. But in that whole back and forth legislative history, is there ever a reason provided by anybody that says, like, for the guy whose determination comes through the day before he dies, his widow is good to go, the guy who, you know, through the cruel twist of fate, his determination comes in a day later, his widow is out? Well, the explanation when 932L was passed was so that the benefits that were already in place could just be continued after death. There were other provisions that had been adopted that allowed a survivor to obtain benefits if they could show that the minor was totally disabled at the time of death. And the reason why this is important is because when Congress reinstated Section 932L, it chose not to reinstate the other provisions, which provided that a survivor could obtain benefits only on a showing that the minor was totally disabled. So there was a whole group of provisions together that provided different benefits. And when Congress acted in 2010, it only reinstated a part of that. And we have to assume that that was intentional. The director wants you to assume that it was a mistake and that the language should still be in there. But the courts, the circuit courts that addressed that have sort of figured it was a mistake, haven't they, saying that they really couldn't reconcile the inconsistencies and that therefore they should give the greater weight to the last iteration, the last word of Congress? Your Honor, there have been other courts that have addressed this. The Third Circuit has addressed this and has come to a similar conclusion as this court did in the Starks case. That's the B&G construction case. And therefore they held that the meaning of 932L was clear and that Congress intended to provide benefits automatically to the eligible survivors of minors who were receiving benefits at the time of their death. Is your position that she could make a claim now and get the benefits if she proved that he had the disease? Yes, Your Honor. Okay. Let me ask you this. Suppose she did that and pled the doctrine of collateral estoppel. In other words, said that because the ALJ made the determination that I now am seeking, I have the benefit of the determination and the argument being that your client is in effect in privity with the director who was resisting the position that the minor was taking in the litigation. Your Honor, I'm not sure I'm following exactly, but I don't think... Here's what... Okay. You start off and the minor seeks benefits. They're denied. So the minor goes before the ALJ and it's litigated and the ALJ determines that he had the disease. Okay? Yes, Your Honor. All right. The director's position and your client's position is identical before the ALJ. Will you agree? At that point in time, we argue that he did not have the disease. I understand. That's what the director said. The director administratively said you don't get the benefits. At the director's level, yes, Your Honor. At the director's level, which meant that the minor had to, in effect, file suit and get a hearing before an ALJ. Correct. Okay. Your client's position and the director's position was identical at that time, was it not? At that time. Later, the director... All right. Okay. Now, let's fast forward now. The widow makes a claim and has to prove that he had the disease. They're now before an ALJ, all right, and the widow says the finding that he had the in this proceeding? Yes, Your Honor. Okay. And I believe that that finding of the existence of disease would be binding, but the statute in section 901 requires that you prove that death was due to... I understand, but there's no question about the disease. Correct. So all that she'd have to prove is the causation issue. Yes, that's correct. All right. But you agree that there would be an estoppel principle there? Yes. All right. I believe that's correct. Yes, Your Honor. All right. To get to your construction of the statute, you began your argument by saying that the statute unambiguously provides that the determination, I'll say, must precede death. Yes, Your Honor. Is it an acknowledgment that to win on the statutory issue, you have to show an ambiguous language because you recognize there's the Chevron principle looming in the distance? Is that the issue? Your Honor, I think at the first step of Chevron, the statute is unambiguous. Explain to me how that is because, frankly, I actually think the statutory language sort of tilts in the other direction. I mean, I would think that if the determination itself had to precede death, not just eligibility more generally, wouldn't the statute have been drafted more sensibly to say, in no case shall the eligible survivors of a minor who was determined at the time of his or her death, moving that phrase up in the sentence, to be eligible to receive benefits be required to? I mean, I was thinking about this as I was preparing for the case. If I received, I think if I received a draft from a law clerk, for instance, that was framed this way with the intention of communicating that the determination had to precede death, not just eligibility, I would say, this isn't the way to do it. You need to move that modifying phrase up in the sentence so that it's clear that it's just the eligibility that must precede death, or that it's the determination, in fact, that must precede death and not just eligibility. I understand your point, Your Honor. I think that the way to look at it is to, first of all, examine when are minors eligible for benefits, right? So we're talking about two different kind of benefits. Minors get disability benefits. Survivors get benefits upon death. Minors are not eligible for benefits after their death. Their eligibility ends at their death. Only survivors are eligible to receive benefits after a minor's death. So it cannot be determined, it could be determined after a minor's death that he was eligible, but he could not have been eligible after he died. So if Congress had intended it the way that the Director argues, they could have just left at the time of death off. They could have said that survivor's eligible when the minor was determined to have been eligible to receive benefits, period. Their interpretation renders the at the time of death completely superfluous. The only way to give that phrase meaning is to link it to the determination that at the time of their death they had to have been determined to have been eligible. Otherwise, it really has no meaning in the context of what minor's benefits are. And the other reason why you would say that the meaning is clear is that that's the way the Secretary had previously interpreted the exact same language in 932L when it passed the regulations the first time that went into effect in 1980. There, the Secretary said that the minor had to have been receiving benefits at the time of death. That was how they implemented this part of 932L. But we give agencies some leeway to change their minds from time to time, right? I mean, that doesn't prove that the statute must mean something else, and it doesn't even prove that the agency was acting unreasonably. It just proves that maybe the administration changed or whatever, and so the agency changed its interpretation. I think it's relevant evidence that the statute was clear as drafted by Congress. But to your point, even if this Court decides that it was ambiguous and that there's some room for interpretation here, it's our position that the Secretary's interpretation is not a reasonable interpretation, given the fact that when Congress decided that it was going to give something back in the way of survivors' benefits, it decided not to reinstate 921A, which was the provision that allowed survivors' benefits if they could show that the minor was totally disabled at the time of death. And that's basically what the Director is arguing here. Their new regulation says as long as there's a determination that the minor was totally disabled before they died or at the time of their death, then the survivors get an automatic award. But Congress left that out. That's not in the statute anymore, and you have to assume that that was intentional. So because the Director's interpretation is not one that Congress would have sanctioned here as clear by its actions, it's not a reasonable interpretation in our view. So first of all, we think that it's clear based on the meaning of the statute that this is an unambiguous language. We think this Court decided it already in Starks, and we think that you can stop at step one. Good morning, may it please the Court. My name is Cynthia Liao, and I represent the Director of the Office of Worker Compensation Programs in the Department of Labor. I'll be focusing today on the automatic entitlement issue. Unless you have any specific questions about the medical evidence, I'll leave it to Ms. Freeman, Mr. Terry's attorney, to address those. The two cases before the Court today, Mrs. Ferguson and Mrs. Terry's, present a very straightforward statutory interpretation question. Did Congress intend to treat certain survivors of minor-to-improved claims differently based on the sheer happenstance that their minors died too early before judiciary got around to approving their claim? The Director's answer, and I hope this Court's answer, is a resounding no. And there's two reasons for this, the text of the statute and the history and purpose of the statute. So starting with the text, as we laid out in our brief, and as Judge Newsom alluded to earlier, under the rule of the last antecedent, the phrase, at the time of his or her death, more plausibly, more logically, more grammatically modifies the closer phrase, eligible to receive benefits, rather than the further away phrase, was determined. At a bare minimum, the grammatical rule creates an ambiguity about what Congress meant to do here. And if there's ambiguity, then the Chevron principles kick in. Also on the text... Well, is there really ambiguity if you apply the last antecedent rule? Does that resolve the ambiguity? Well, we think that under that grammatical rule, the Director's interpretation is more reasonable than employers. So you say, objectively correct at step one, and in any event, reasonable at step two? Yes. Also, if Congress had wanted to do things the way the employer wanted the statute to have written, the survivor is eligible, or eligible survivors, if the minor was receiving benefits at the time of his death. Congress did use the phrase, receiving benefits, in another part of the statute, but they did not use it here. When they enacted 932L, they used this particular phraseology, determined to be eligible at the time of his death. So this suggests that Congress meant to allow a broader group of survivors to be automatically entitled, not just survivors of minors who were receiving benefits at the time of their death. Can I ask you to help me with one statutory thing that I fear I just missed in your opponent's argument? Her response to my statutory analysis was, no, no, no, because that renders part of the statute superfluous, redundant, meaningless. That's not the case at all. Can you explain that? And maybe I might even ask her again on rebuttal, just so I make sure I've got this locked down in my own mind. Yes. I believe employers' assumption is that if a minor is eligible at one point in his life, then he's going to stay eligible to the end of his life. And that might be the case in some cases, but it's not always the case. For instance, if a minor is working, even though he's totally disabled, he can still get benefits. But if he keeps working too long, for example, over a year, then he becomes ineligible. So he might be eligible at one point in his life and ineligible at a later point in his life before he dies. More commonly, a minor might have his award reversed on appeal, or there's also a process in the statute called modification, which results in kind of the same thing, where he has an award one day, but not the next day when it's modified. So the phrase, at the time of his or her death, is not just sitting there doing nothing. It does cover situations like this, where a minor might not be eligible from the point he's awarded to the point of his death. Okay. What is the difference in the benefits that the widow would receive under your theory and under opposing counsel's theory, that if she proved in a separate proceeding that the death was caused by the disease, what difference is there in the benefits, if any? In terms of the money, I don't think there's a difference, but it is much harder. No difference in the benefits. If she can prove death. Yeah. If she proved that the disease caused the death, that she would get some benefits. Yes. How would they differ from the benefits that she automatically got, other than the time amount that you're missing? It's just much harder to do it under that high standard, because to prove death due to pneumoconiosis, you typically have to... No, I'm just talking about the amount of the benefits. The same benefits, aren't they? I believe so, but the chance that you'll actually get it is much less. Under the position that you're taking and she's taking, she's going to get X dollars in benefits. A monthly payment, is that not the case? Right. Okay. If she proved that death was caused by the disease, is it the same benefit, same monthly benefit? Yes. Okay. But as I was saying, it's much harder to prove. I understand that. That's what's in balance. The balance is having to prove that the death was caused by the disease, not the amount of the benefits. Right. The director's interpretation is also supported by the history of the statute. When 932L was enacted, Congress was concerned about an egregious inequity, that too many survivors were being denied benefits at too high of a rate. 932L was their solution, at least for survivors whose minors had approved claims. There's no evidence that Congress meant to carve out certain people based on random facts, like random events, like when the minor died, or things the minors and their families couldn't control, like how their claim is adjudicated. Under employers' interpretation, if, for example, a minor was erroneously denied benefits, meaning they should have gotten it from day one, but somehow they weren't given benefits on that day and that error persisted all the way to the Court of Appeals level, for the Court of Appeals awarded benefits the day after he died, their survivors would be out of luck. They start from scratch. They have to re-prove things he already proved, like he has pneumoconiosis, his pneumoconiosis is tied to his employment, and they also have to prove that he died of pneumoconiosis, which they wouldn't have had to prove in the minor's claim. If we take employers' was receiving benefits phraseology at face value, it's even more absurd than that, because say a minor filed a claim during his lifetime, was approved before he died, but didn't have the check in hand when he died, still, the survivor would be out of luck. So he has to start over, again, re-prove that he has pneumoconiosis, that his pneumoconiosis is tied to his employment, and also prove that he died due to pneumoconiosis. I also note that employers' interpretation encourages gamesmanship and delay by employers in cases, especially in cases involving the sickest minors, who are most likely to die while their claim is pending. Because if the employer can wait it out, can drag things out, they will get to delay the survivor's claim because she will likely have to take more time to develop her medical evidence, and they might be able to avoid paying altogether the survivor's benefits because, again, it's a much higher standard, it's much more difficult to prove that he has pneumoconiosis than to just prove that the minor had an approved award. I guess the factual eligibility fight in the other case, I know there are two cases here, one of which has the factual eligibility dispute, which your co-counsel will cover. But that demonstrates, I suppose, the value of the automatic entitlement because we've got scads of doctors and evidence and briefing about the causation aspect of that appeal. And so even if it's the same benefit in the end, to get there you're going to have to hire all these doctors and have this mini-trial on causation. Right, it's going to take the survivor a lot more resources and patience and time to get to the same conclusion compared to automatic entitlement. So can I ask you this question, what do you say about Starks? She's riding Starks pretty hard. There is language in Starks, you know, we therefore hold that. And at the end of that sentence was receiving benefits at the time he died. Well, Starks simply does not control this case because, as has already been discussed, the facts are just different, materially different. In Starks, the minor filed a claim, was approved, and got benefits before he died. There was no question among the parties of the court in that case that he definitely was determined to be eligible to receive benefits at the time of his death. So that wasn't an issue before the Starks court. What was before the Starks court was whether Mrs. Starks had to, nevertheless, prove that he died due to pneumoconiosis. And the court answered no, as long as she's dependent and has the right relationship with the minor. So having the determination pre-death is sufficient but not necessary. That's what Starks holds, that's your contention? Of course it's sufficient for the minor's widow to show that the determination preceded death. But your response is that Starks does not hold that it is necessary that the determination preceded death. Right. I think we've talked in our brief about the Edwards case where this court held that just because X plus Y is sufficient doesn't mean just X might not also be sufficient. Even if the court said X plus Y or X is sufficient where the facts of the cases are different. Also tellingly in Starks, if you were to replace every single time the Starks court said was receiving benefits with exact statutory language, nothing changes. Because the reasoning of that case doesn't rely on this idea that the minor has to be receiving benefits when he dies. And finally, Starks was decided in 2013, a few months before the current regulation was promulgated. So that alone, that change in the regulatory landscape, I think merits a fresh look at whether the director's regulation gets Chevron deference. The employer also argued that director's interpretation is creating a backdoor way to allow survivors to get benefits through proving the minor was totally disabled. And that's not the case. The director does not think that all the ways the survivors could get benefits back in 1980 have been totally restored. There's still a group that cannot get benefits, even though they would have been able to back then. And that's survivors whose minors never filed a claim. They can't prove that he was totally disabled. They have to prove that he died due to pneumoconiosis. That group is still under that bar from the 1981 amendments. The way that Mrs. Ferguson and Mrs. Terry are getting benefits, we think, is not through that 921A provision where the 1991 amendment is still there. It's through 932L. The minors were determined to be eligible to receive benefits. And also, the employer argues that Congress expected the agency to go back to the 1980 reg, that that froze in time what the agency thought 932L meant, and that we needed to go back to that. But again, that's not the case. As Judge Newsom alluded to earlier, agencies can change their mind even if the statute didn't change. In this case, the statute did change. It changed in 1981. It changed in 2010. And we didn't go back to the way things were in 1980. So, naturally, the regulation had to change. And that's perfectly acceptable. And it has no bearing on whether the current regulation is a reasonable interpretation. So, to this day, the employer has not identified one good reason why Congress would have wanted to treat some survivors differently than others based on arbitrary facts like the minor's death date or the progress of his claim or things like when the Postal Service delivered their benefits check before or after their death. So, for these reasons, we ask the Court to deny the petitions for review and to affirm the Board's decisions below. Thank you. Thank you. Fraven. Good morning, Your Honors. May it please the Court? Cecilia Fraven for the claimants. The AOJ's decision in these cases based on the medical evidence is due to be affirmed as the decision is supported by substantial medical evidence. And is in accordance with the law. If Your Honors have any questions about the medical evidence, I'd be happy to answer them. If not, however, I would like to point out a few other things that the DOL has not addressed. As someone who represents minors and survivors on a regular basis, I think that there are some unintended consequences of this act. And I heard y'all talk about consequences earlier. And I think the consequences of this could be very big. And one of those is that we are shifting the burden to these courts in making timely decisions. And I know right now that the ALJs are not giving priority to black lung cases because there are other matters that require a more timely decision. Specifically, there are some immigration cases and whistleblower cases that have to be heard first because they're time sensitive and they require an expedited ruling. The retroactive nature of black lung benefits have allowed ALJ judges to prioritize the cases accordingly because no real damage is done to a minor by delaying a ruling. That would no longer be the case. ALJ judges would now have to prioritize black lung cases because of the living minor cases would be now considered time sensitive. We are putting pressure on the courts now to decide these cases as quickly as they would an immigration case or a whistleblower's case. Well, these ALJs are tied to the department. They're not like state ALJs. They go all over the place. Correct. So they're not deciding whistleblower cases. Correct. Well, some of the administrative law judges are deciding specific ALJ cases. They have explained to us that the black lung cases are put behind these other time sensitive matters. We understand how it operates. Right. So you're putting pressure on the ALJs to move all the black lung. You understand that point. Yes. Okay. Another issue is that you're creating a situation where we could have two similarly situated survivors where one of them is awarded survivor's benefits and one is not due solely to the fact that one is in a court system with more backlog than the other one is and it has nothing to do with the actual merits of the case, which I don't think that there is any argument that that was the intention of this act. We're also adding another element. I love your point. I think we understand your argument. Okay. Thank you, Your Honor. Ms. Wolfe. Thank you. All right. So I want to be fair. Let's talk about redundancy again. Okay. I will try to make my point a little clearer this time. As to the redundancy of the phraseology at the time of death, if a minor is determined eligible for benefits, such a condition necessarily exists at the time of death. But she says you can kind of go into and out of eligibility. I've never seen that happen. I mean, minors are found eligible and they receive benefits up until their death. What if they work for a year, like she said, and do they roll out of eligibility? Your Honor, I have never seen that situation. Well, it's kind of like Social Security disability cases. Somebody disabled under the Social Security Act and they ultimately become not disabled for the purpose of the act. I think that's what she was saying. I mean, there may be a situation where there's an offset in the benefits at some point in time, but they never become uneligible. Well, they always have the disease. They've been found to be totally disabled by the disease. And the preamble to the statute says that it can be a progressive disease. So there's not a case that I've ever seen where somebody is totally disabled one day and then the next day they miraculously recover. That's just not the way Black Lung works. So in my experience, every person that's found to be entitled to benefits continues to receive those benefits up until the date of their death. But they're no longer eligible for disability benefits after their death. So it could be determined after their death that they were eligible during their lifetime, but they're not going to be eligible after their death. And so that's why the language at the time of death, under the Director's interpretation, is superfluous. It doesn't need to be there. If all they have to show is at some point in time they were found to be totally disabled, the court could have stopped for the at-the-time-of-death language, and it would have had the same meaning here. I think to the point about the rule of last antecedent, that rule is not mandatory if the construction that's given based on that rule conflicts with other parts of the statute or is illogical. And I think that's the case that we have here. I think the most logical reading of the statute, as the court interpreted in Starks, is to read it so that the minor had to have been determined before they died that they were eligible. But so I guess, I mean, if we're just sort of, this is like a war of interpretive principles. She says last antecedent. You say the canon against redundancy. She says absurd consequences because you're going to have, you know, determination pre-death gets benefits, determination the day after death doesn't get benefits. And so I don't know, at the end of all of that, why not Chevron? Yes, Your Honor, and I can throw in one more on my side if I can. I think that this is an exception to a general rule because the statute's purpose, as set out in the very first section of the act, is to provide benefits to survivors whose minor's death was due to pneumoconiosis. And then there's two other sections that repeat that same language. This is when the secretary can provide survivors benefits. The only place in the act where it allows a survivor to get benefits without making a showing of causation is 932L. So it's an exception to the general rule, which needs to be narrowly construed to the factors that Congress intended. And I'm out of time. We urge that you reverse and send it back for a determination as to whether his death was due to pneumoconiosis. Thank you. Thank you. Worthy vs. City of Phoenix.